JUDGB DUVALL
delivered the opinion oe the coukt:
The appellant relies upon two grounds for a reversal of the judgment in this case:
*382 1. That tbe demand set up by him in his answer, by way of counter-claim or set-off, was not controverted by the appellees, and should, therefore, have been allowed by- the court.
2. That he was not served with process upon the answers and cross-petitions of the defendants, Willis and wife and Hughes and Vandyke.
Upon the first point we are satisfied that the facts stated in the answer of Jenkins, are wholly insufficient to authorize the legal deduction that there existed any lien in favor of the vendors of Standeford, upon the property in contest. The answer alleges, it is true, that the notes of Standeford to his vendors, Jones and Busey, $281.35 of which was paid by the appellants, were unpaid at the time the latter purchased the property from Standeford, and that those notes constituted an incumbrance or liens upon the property which the appellant had a right to discharge for the protection of his own title. But the notes are exhibited with the answer, and they show upon their face that they were payable, not in money, but in sawing — in other words, each of the three notes is for “one hundred dollars worth of sawing.” For all that appears in' this record, there has been no breach of this contract by Stan-deford. It is not alleged in the answer that the labor stipulated to be performed had ever been demanded, and it is clear that, without such demand, no right of action in favor of Jones and Busey, the covenanters, had accrued. (Hawkins vs. Bull, 18 B. Mon., 820.) It follows that the obligations on which the alleged payments were made by the appellant, could not have been enforced at the time, either at law or in equity, and, of course, they constituted no valid or subsisting lien upon the property. Besides, it does not appear, from the answer or the exhibits filed with it, that the conveyance from Jones and Busey to Standeford, reserved or created a lien upon this property, by which the payment of the notes relied upon would have been secured, according to the provisions of the Revised Statutes.
In regard to the second objection relied upon, we remark, that the judgment complained of was rendered at the March-term, 1858, directing a saje of the property for the satisfaction *383 of the several demands set up by the plaintiff, and by the defendants, who were holders of the notes which the appellant had given for the purchase money of the property. Those defendants had been brought before the court by amended petitions filed by the plaintiff, and they had each answered, setting up the notes theyq’espectively held, by assignment from Standeford, and asking that the proceeds of the sale of the property might be distributed equally, or rateably, among the several holders of the notes. They sought no personal judgment upon the notes against their co-defendant, Jenkins. At the succeeding July term of. the court the commissioner filed his report'of the sale. It does not appear, from the record, that the appellant .made any objection whatever, either to the judgment or to the sale made in pursuance of it. Under these circumstances it might be well questioned whether he should be allowed to complain here, for the first time, that he had had no legal notice of the demands set up by his co-defendants, even if it were conceded that this was a case in which cross-pleadings and service of process upon them was necessary. -
But we do not concede that service of process upon the answers of the defendants, in which they set up their respective demands and liens upon the property sought to be subjected to sale for ’payment of the purchase money, was necessary in this case. Before the adoption' of the Civil Code, this court had recognized the general rule of equity practice, according to which one defendant could not be entitled to a decree agajnst a co-defendant, without asking for it in a cross-bill and the service of process thereon. But it was held, that the rule was not universal, and extended only to those cases to which the reasons for it applied; that, for instance, it did not apply to a suit in chancery by one'distributee against an administrator and. co-distributee; or by one legatee against his co-legatees, and the executor, for 'ascertaining and distributing a fiducial fund, in which all the distributees and legatees have a common interest derived from the same source. In such a case, the administrator or executor has a right to require a comprehensive decree, settling and distributing the entire fund *384 among all who may be entitled to it; and the nature of the case and end of the suit, as in a suit for an account, or for settling a partnership, dispense with the necessity of formal inter-pleading. (Caldwell’s ex’r. vs. Kinkead, &c., 1 B. Mon., 228.)
It seems to us that all the reasons for the exceptions to the rule, enumerated in the case cited, apply with equal propriety to the class of cases to which the one under consideration belongs. Here, all the incumbrances or holders of the notes, which Jenkins had executed for the purchase money, were necessary parties to the action, and were necessarily required to be brought before the court, before the plaintiff could have been entitled to any judgment for a sale of the property. The object of the suit was to create, by the sale of the property, and to distribute among all the incumbrances, equally or rate-ably, a fund in which they all had a common interest, derived from the same source, and, consequently, Jenkins himself had an obvious right to require a comprehensive judgment, by which the entire amount of liens should be ascertained, and the entire fund distributed among all who were entitled.
It seems to us that the principle which dispenses with the necessity of interpleading between the defendants, where the action is by a legatee, against his co-legatees' and the executors, is equally applicable to cases like the present. And the provisions of the Civil Code, so far from restricting the rule, have necessarily, we think, extended its operation. It is well known that no provision was made, by the Code, for cross-pleadings by one defendant against another; and, by section 36, “of the parties to the action, those who are united in interest must be joined as plaintiffs or defendants.” Now, in cases where the fund to be distributed amongst several claimants is less than the aggregate amount of the claims, there would, in general, be no such unity of interest among the claimants as would authorize them to join as plaintiffs in the action, and the plaintiff, suing to enforce his demand, would, therefore, be required to make all the rest defendants, thus presenting a case in which no relief could have been granted, either to the plaintiff or the defendants, upon the hypothesis that no judgment could be rendered for the defendants against their co-defend *385 ant without cross-pleadings and the service of process. There is nothing in the recent act authorizing cross-petitions and process to issue thereon, as between co-defendants, which can affect the principles applicable to this case.
The judgment is affirmed.